UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SERGEY SALEY,

                    Petitioner,

         v.

BRUCE SCOTT et al.,

                    Respondents.

CASE NO. 2:26-cv-00797-JNW

ORDER GRANTING PETITION FOR
HABEAS CORPUS

This matter comes before the Court on Petitioner Sergey Saley's Petition for a Writ of Habeas Corpus. Dkt. No. 1. The Court GRANTS the petition for the reasons stated below.

## 1. BACKGROUND

Petitioner Sergey Saley is a stateless individual detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. No. 1 ¶ 12. Saley was born in the Union of Soviet Socialist Republics (USSR), now Russia.[1] *Id*. ¶ 18.

---

[1] Respondents treat Saley as a citizen of Russia. Dkt. No. 5 at 5; Dkt. No. 7 ¶ 4. They note that "Russia never denied Petitioner's citizenship." Dkt. No. 5 at 5. But the 2014 letter from the Russian Consulate General states that it "cannot start

ORDER GRANTING PETITION FOR HABEAS CORPUS - 1

In 1998, Saley and his family settled in the United Stated as refugees. He obtained lawful permanent residency status on October 31, 2000. Dkt. No. 7 ¶ 4. Between 2004 and 2010, Saley was convicted of several crimes for which he served custodial sentences. *Id.* ¶¶ 5–10. On January 31, 2012, Saley was detained by ICE after completing a sentence in federal prison. *Id.* ¶ 12. He was placed in removal proceedings and on June 25, 2012, an immigration judge ordered Saley's removal to Russia. *Id.* ¶ 16. In late 2014 and early 2015, ICE unsuccessfully attempted to effectuate Saley's removal to Russia. *Id.* ¶¶ 22–30. Because the Russian Consulate would not provide Saley with travel documents, Respondents released Saley on an Order of Supervision ("OSUP") on January 28, 2015.[2]

Respondents contend that Saley missed eight online biometric appointments from July 1, 2022 to June 1, 2025. *Id.* ¶¶ 31–38. Saley contends that the check-in appointment phone application that ICE uses to monitor noncitizens had technical glitches that prevented him from completing those appointments on time. Between those various "missed" appointments, Saley completed his regular in person appointments and other online biometric check-ins without incident. During one of his in-person appointments, Saley was reassured that he would not be penalized for the missed check-ins because ICE was aware of the system's technical issues. Dkt. No. 1-2 at 10–16.

procedure of confirming/denying his Russian citizenship" due to insufficient information. Dkt. No. 6-4. And Saley himself told ICE officers that he "has no country to recognize his citizenship." Dkt. No. 6-1 at 3. The Court need not resolve this dispute because, regardless of Saley's formal nationality, the undisputed record shows that Russia has never issued travel documents for him despite years of effort.

ORDER GRANTING PETITION FOR HABEAS CORPUS - 2

On December 16, 2025, Saley was arrested by Enforcement and Removal Operations ("ERO") when he showed up for his check-in appointment at the ERO Spokane office. *Id*. ¶ 39. Without notice or a hearing, Saley was taken into custody. That same day, ICE agents served Saley a Notice of Revocation, explaining that his OSUP was revoked due to his missed biometric appointments and because Russia had allegedly changed its internal policy regarding the issuance of travel documents. Dkt. No. 6-6. The Declaration of Deportation Officer Robert Andron states that Saley was served notice of detention and warrant of his arrest, however Respondents do not supply a copy of these records. Dkt. No. 7 ¶ 39.

On March 6, 2026, ERO sent a travel document application to the Russian Consulate. The application remains pending. DO Andron states that removal is in the reasonably foreseeable future because "Russia has changed its internal policy of issuing travel documents for its citizens." *Id*. ¶¶ 42–45.

## 2.  DISCUSSION

### 2.1  Legal standards.

#### 2.1.1  Habeas relief.

Federal courts have authority to grant writs of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of

habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to warrant relief, a petitioner must demonstrate that his detention is unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004) ("In state collateral litigation, as well as federal habeas proceedings, it is the petitioner who bears the burden of proving his case."); *see also Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) ("petitioner carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief" when challenging incarceration by the state under 28 U.S.C. § 2254). A district court's habeas jurisdiction extends to challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

### 2.1.2    Other equitable relief.

Federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). "Where habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has 'the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them,' 'irrespective of the accompanying habeas petition.'" *See Francisco Lorenzo v. Bondi*, Case No. 2:25-cv-02660-LK, 2026 WL 237501, at *6 (W.D. Wash. Jan. 29, 2026) (quoting *Roman*, 977 F.3d at 941–42). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy

past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman*, 977 F.3d at 942 (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

Plaintiffs seeking equitable relief in the form of permanent injunctions must show: "(1) that [they] ha[ve] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange*, L.L.C., 547 U.S. 388, 391 (2006); *see Francisco Lorenzo,* 2026 WL 237501, at *6 (applying permanent injunction standard to injunctive relief requested in immigration habeas proceedings).

**2.2   Saley's detention is no longer authorized under *Zadvydas*.**

In *Zadvydas*, the Supreme Court held that 8 U.S.C. § 1231(a)(6) "does not permit indefinite detention." 533 U.S. at 689. Rather, it allows detention only for "a period reasonably necessary to bring about that [noncitizen]'s removal from the United States." *Id*. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id*. at 699. The Court established six months as the "presumptively reasonable" period of post-removal-order detention. *Id*. at 701. After that, "once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. [A]as

the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*. The Government's burden to justify continued detention thus becomes increasingly demanding over time.

Saley is detained under 8 U.S.C. § 1231(a)(6). *See Zadvydas*, 533 U.S. at 682. He was ordered removed on June 25, 2012, Dkt. No. 7 ¶ 16, and that order became final on May 28, 2014, following appeal to the Ninth Circuit, *Id*. ¶ 26. The six-month presumptively reasonable period has long since expired. Saley has shown there is no good reason to believe that his removal is likely to occur in the reasonably foreseeable future. ICE has already tried and failed to remove him to Russia once before, no country recognizes him as a citizen, and the Russian Consulate has never issued travel documents for him.

Respondents identify the *Zadvydas* standard but do not make any argument that Saley's removal is in the reasonably foreseeable future. *See* Dkt. No. 5. To the extent Respondents rely on the Andron Declaration's statement that "Russia has changed its internal policy of issuing travel documents for its citizens" and that "[t]here is a significant likelihood that Petitioner will be removed in the reasonably foreseeable future," Dkt. No. 7 ¶ 45, this is insufficient. DO Andron does not attest to any facts within his personal knowledge regarding Russia's willingness to issue travel documents or a change in policy. Respondents cannot meet their burden on this conclusory statement. And Respondent's burden here is high. After nearly 12 years without removal—including one prior period of detention during which Respondents failed to obtain travel documents—Respondent's burden to justify continued detention is heightened. What counts as the reasonably foreseeable

ORDER GRANTING PETITION FOR HABEAS CORPUS - 6

future has correspondingly shrunk. At most, Respondents have proved that "there is at least some possibility" that Russia, "at some point" might accept Saley. *Abubaka v. Bondi*, No. 25-cv-1889-RSL, 2025 WL 3204369, at *5 (W.D. Wash. Nov. 17, 2025) (quoting *Nguyen v. Scott*, 796 F. Supp. 3d at 725 (W.D. Wash. 2025)). But as other courts in this district have found, "[t]hat is not the same as a significant likelihood that [the petitioner] will be accepted in the reasonably foreseeable future." Id. (quoting *Nguyen*, 796 F. Supp. 3d at 725); *see also Singh v. Gonzales*, 448 F. Supp. 2d 1214, 1220 (W.D. Wash. 2006) (Government failed to meet *Zadvydas* standard on rebuttal because it provided "no substantive indication regarding how or when it expect[ed] to obtain the necessary travel documents" to remove the petitioner).

Because there is no significant likelihood of removal in the reasonably foreseeable future, Saley's continued detention is no longer authorized by statute and violates due process. He must be released.

## 2.3    Saley's OSUP revocation violated due process.

Respondents argue that Saley's OSUP revocation comported with due process and federal regulations. Dkt. No. 5 at 8–11.

Under *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976), courts weigh the private interest at stake, the risk of erroneous deprivation through existing procedures, and the Government's interest to determine what process is constitutionally required. All three *Mathews* factors favor Saley.

First, Saley's private interest is perhaps at its height, as "[f]reedom from imprisonment—from government custody, detention, or other forms of physical

ORDER GRANTING PETITION FOR HABEAS CORPUS - 7

restraint—lies at the heart of the liberty protected by the Due Process Clause." *Zadvydas*, 533 U.S. at 690. Saley and his family settled in this country as refugees when Saley was a teenager. Dkt. No. 1 ¶ 18. He obtained work authorization and developed even more family ties—his wife and his newborn son also live here. His son is a citizen. Dkt. No. 1-2 at 21–25. He has lived under an OSUP for more than 14 years, all in reliance on his release. Dkt. No. 6-5. Respondents do not meaningfully rebut this, instead they simply "respectfully disagree" with the premise that noncitizens have a general interest in being free from custody. Dkt. No. 5 at 9 n.4.

Second, the risk of erroneous deprivation is high. Respondents argue that Saley "presented no evidence" that ICE did not give him notice and opportunity to be heard regarding his OSUP revocation. Yet Saley effectively argues that he did not receive notice or an opportunity to be heard prior to his detention. Dkt. No. 1 ¶¶ 57, 60. And Respondents concede as much. The Notice of Revocation for Saley's OSUP, Dkt. No. 6-6 at 4, was served to Saley on December 16, 2025, the day of his detention, Dkt. No. 7 ¶ 39. Notice on the same day is not notice. Respondents argue that the revocation comported with federal regulations which only requires notice "upon," not before, revocation. This Court and other courts in this District have found that due process requires pre-deprivation notice and a hearing before revoking a noncitizen's order of supervision and re-detaining them. *See Ledesma Gonzalez v. Bostock*, Case No. 2:25-CV-01404-JNW-GJL, 2025 WL 2841574, at *7 (W.D. Wash. Oct. 7, 2025); *Vo v. Scott*, No. 2:26-CV-00135-JNW, 2026 WL 445046 *4 (W.D. Wash. Feb. 17, 2026). *See also, Tessema v. Bondi*, No. C25-2330-JNW-MLP,

ORDER GRANTING PETITION FOR HABEAS CORPUS - 8

2025 WL 4033288, at *1 (W.D. Wash. Dec. 11, 2025), report and recommendation adopted, No. C25-2330-JNW-MLP, 2026 WL 84922 (W.D. Wash. Jan. 12, 2026); *Pineda v. Chestnut*, No. 1:25-cv-01970-DC-JDP (HC), 2026 WL 25510, at *5 (E.D. Cal. Jan. 5, 2026); *Tesara v. Wamsley*, Case No. C25-1723-KKE-TLF, 2025 WL 3288295, at *1, *6 (W.D. Wash. Nov. 25, 2025). A "post-deprivation hearing[ ] cannot serve as an adequate procedural safeguard because [it occurs] after the fact and [thus] cannot prevent an erroneous deprivation of liberty." *Ledesma Gonzalez*, 2025 WL 2841574, at *8–9 (quoting *E.A. T.-B.*, 795 F. Supp. 3d at 1324).

Respondents argue that compliance with federal regulations satisfies due process. But even measured against that standard, Respondents fell short. The Notice's justification that "the country of Russia has since changed their internal policy regarding the issuance of travel documents for its citizens, and there is now significant likelihood of your removal from the U.S. in the foreseeable future," Dkt. No. 6-6 at 2—is boilerplate language that gives Saley no information about the factual basis for revoking his OSUP and no basis to provide a meaningful response. *See, e.g.*, *Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 787 (D. Minn. 2025) ("Simply to say that circumstances had changed or there was a significant likelihood of removal in the foreseeable future is not enough. Petitioner must be told *what* circumstances had changed or *why* there was now a significant likelihood of removal in order to meaningfully respond to the reasons and submit evidence in opposition."); *Saengphet v. Noem*, 3:25-cv-2909-JES-BLM, 2025 WL 3240808, at *6–7 (S.D. Cal. Nov. 20, 2025) (Notice stating that ICE "has determined that you can be expeditiously removed from the United States pursuant to an outstanding order of

ORDER GRANTING PETITION FOR HABEAS CORPUS - 9

removal against you" falls short of what is required under regulation and due process).

Third, Respondents' interest in re-detaining Saley without a hearing is low. Nothing prevented ICE from scheduling a hearing before his December 16, 2025, check in. The missed check-ins that triggered Saley's re-detention took place over the course of three years, from July 2022 through June 2025, with the latest violation occurring more than six months before the date of revocation. Dkt. No. 7 ¶¶ 38–39 (Petitioner's last "missed" biometric appointment was on June 1, 2025, and he was detained on December 16, 2025). This sequence of events undermines any claim of urgency. *See E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1323–24 (W.D. Wash. 2025). Moreover, the Court observes that the OSUP itself does not appear to require online biometric appointments through a phone application; it references only in-person reporting, which Respondents do not contend Saley missed. Dkt. No. 6-5 at 4–5.

Applying the *Mathews* test, this Court finds that due process requires pre-deprivation notice and a hearing before revoking a noncitizen's order of supervision and re-detaining them. *Aslan v. Wamsley et al.*, Case No. 2:25-cv-02698-JNW, 2026 WL 238675, at *3 (W.D. Wash. Jan. 29, 2026) (citing *E.A. T.-B.*, 795 F. Supp. 3d 1324). Courts in this district and elsewhere have consistently reached the same conclusion. *See, e.g.*, *Tessema,* 2025 WL 4033288, at *1; *Pineda,* 2026 WL 25510, at *5 ("Although Respondents allege in their opposition that Petitioner repeatedly violated the terms of her release [citation omitted], no neutral arbiter has determined whether those facts show that Petitioner is a flight risk or danger to the

ORDER GRANTING PETITION FOR HABEAS CORPUS - 10

community."); *Tesara*, 2025 WL 3288295, at *1, *6 (even when it alleges supervised release violations, the Government must provide notice and a pre-detention hearing to comply with due process); *Ledesma Gonzalez*, 2025 WL 2841574, at *8–9.

This case presents nothing that would warrant a different result. Respondents concede that no notice or pre-deprivation hearing was provided. They argue that revocation that comports with the regulations is enough. However, even when judged against the regulations, Respondents did not provide Saley with those protections. Regardless of the alleged OSUP violations, Respondents must provide notice and a pre-detention hearing to comply with due process. Saley's re-detention violates due process, and this forms another basis for his release.

Because the Court grants relief on constitutional grounds, it need not reach Saley's separate claim that the OSUP revocation was arbitrary and capricious under the Administrative Procedure Act and the Immigration and Nationality Act.

**2.4    Respondents must follow the law if they re-detain Saley again.**

Saley asks the Court to prohibit his future re-detention absent notice and an opportunity to be heard. The Court finds this relief is necessary to fully realize the intent of this order.

Saley has satisfied the requirements for a permanent injunction. *See eBay*, 547 U.S. at 391. He suffered irreparable injury through the violation of his constitutional right to due process and his unlawful detention. No monetary remedy can compensate for the deprivation of physical liberty. The balance of hardships favors Saley, as the injunction requires only that Respondents comply with the

ORDER GRANTING PETITION FOR HABEAS CORPUS - 11

Constitution before re-detaining him. And the public interest is served by an order prohibiting Respondents from violating the Due Process Clause.

Saley has also established a "cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). ICE has already detained Saley once for a significant amount of time. ICE's routine system check flagged him based on his alleged OSUP violations, raising concern that, absent injunctive relief, Saley may be subject to the same due process violation again. Several courts in this district have granted similar relief under comparable circumstances. *See, e.g.*, *Nguyen*, 2026 WL 183819, at * 6; *Wana v. Bondi*, No. 25-cv-2321, 2025 WL 3628634, at *6 (W.D. Wash. Dec. 15, 2025) (prohibiting re-detention without notice and hearing); *Tzafir*, 2026 WL 74088, at *5 (same); *Yuksek v. Bondi*, No. 25-cv-2555, 2026 WL 60364, at *5 (W.D. Wash. Jan. 8, 2026) (same); *Do v. Scott*, No. 24-cv-2187, 2025 WL 3496909, at *6 (W.D. Wash. Dec. 5, 2025) (prohibiting re-detention without valid travel document and other specified conditions).

Accordingly, the Court prohibits the re-detention of Saley unless Respondents first provide written notice of the basis for the proposed re-detention and an immigration court hearing is held to determine whether detention is appropriate.

### 3. CONCLUSION

Accordingly, the Court ORDERS:

1. The Petition for a Writ of Habeas Corpus is GRANTED, Dkt. No. 1.

ORDER GRANTING PETITION FOR HABEAS CORPUS - 12

2.  Respondents must RELEASE Petitioner from custody within TWENTY-FOUR (24) hours of this order, subject to the conditions of his prior OSUP.

3.  Petitioner may not be re-detained unless Respondents provide Petitioner with written notice of the basis for the proposed re-detention in advance and an immigration court hearing is held to determine whether detention is appropriate.

4.  Within FORTY-EIGHT (48) hours of this order, Respondents must provide the Court with a status report confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

5.  Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (the Equal Access to Justice Act authorizes the award of attorney's fees to petitioners who prevail against the government in immigration habeas actions).

Dated this 3rd day of April, 2026.

Jamal N. Whitehead
United States District Judge

ORDER GRANTING PETITION FOR HABEAS CORPUS - 13